UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YONNATAN SOTO GARCIA,<br><br>Petitioner,<br><br>v.<br><br>TONYA ANDREWS, in official capacity as the Facility Administrator of Golden State Annex, et al.,<br><br>Respondents. | No. 2:25-cv-01884-TLN-SCR<br><br>**ORDER** |

This matter is before the Court on Petitioner Yonnatan Soto Garcia's ("Petitioner") Motion for a Temporary Restraining Order ("TRO") and Motion for Preliminary Injunction. (ECF No. 9.) Respondents Tonya Andrews, Orestes Cruz, Todd M. Lyons, Kristi Noem, and Pam Bondi (collectively, "Respondents") filed an opposition. (ECF No. 12.) The Court held a hearing on July 10, 2025. (ECF No. 13.) For the reasons set forth below, Petitioner's motion is GRANTED.

///
///
///
///

1

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Mexico who arrived in the United States when he was four years old.  (ECF No. 9 at 11; ECF No. 12 at 1.)  On September 14, 2022, the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") detained Petitioner stating he had an aggravated felony conviction that subjected him to an administrative order of removal.  (ECF No. 9 at 9.)  That same day, ICE issued Petitioner a Notice of Intent to Issue a Final Administrative Removal Order ("the Notice").  (*Id.* at 11.)  In the Notice, ICE alleged Petitioner: (1) was not a citizen of the United States; (2) was not admitted or paroled into the United States; and (3) was convicted of Cal. Penal Code § 664/288(A) before the San Joaquin Superior Court on June 9, 2020.  (*Id.*)  ICE issued the Final Administrative Removal Order that same day.  (*Id.*)

Petitioner sought protection from removal in withholding-only proceedings, claiming a fear of return to Mexico and protection under the Convention Against Torture.  (*Id.*; ECF No. 12 at 2.)  The immigration judge denied Petitioner's applications for protection on March 15, 2023.  (ECF No. 9 at 11.)  On April 10, 2023, Petitioner filed an appeal with the Board of Immigration Appeals, which is currently pending.  (*Id.* at 11–12.)

On May 25, 2023, Petitioner appeared for a bond hearing.  (*Id.* at 12.)  At the bond hearing, the immigration judge held the Government had been unable to establish that Petitioner posed a risk of danger or flight by clear and convincing evidence and ordered Petitioner's release on a $3,000 bond and placement on release conditions.  (*Id.*)

In April 2024, Petitioner completed parole.  (*Id.*)  The next month, Petitioner was arrested in Stanislaus County and charged with Cal. Vehicle Code § 14601.2(a), driving on a suspended license, and Cal. Vehicle Code § 23247(e), operating a vehicle not equipped with a functioning ignition interlock device.  (*Id.* at 13.)

On May 27, 2025, ICE asked Petitioner to report to the Intensive Supervision Appearance Program ("ISAP") office.  (*Id.* at 14.)  While waiting in the lobby of the ISAP office, Petitioner was arrested by ICE officers on May 28, 2025.  (*Id.*)  Petitioner is currently detained at Golden State Annex in McFarland, California.  (*Id.* at 10.)

2

On July 3, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On the same day, Petitioner filed a motion for a TRO and motion for a preliminary injunction. (ECF No. 2.) Following Court order[1], (ECF No. 5), Petitioner filed the instant amended motion on July 7, 2025. (ECF No. 9.) Petitioner requests the Court order ICE to release Petitioner from custody until he is afforded notice and a hearing before a neutral decisionmaker to decide whether his bond should be revoked. (*Id.*)

## II.   STANDARD OF LAW

A TRO and a preliminary injunction are both extraordinary remedies. In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

For both a TRO and a preliminary injunction, courts consider whether Petitioner has established: " [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion, a district court may weigh Petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support

---

[1] The Court's Order imposed a temporary restraining order enjoining Petitioner's removal and his relocation to another judicial district pending a scheduled hearing. (ECF No. 5.) Respondents argue the Court's orders are beyond the scope of the Court's jurisdiction and should be vacated. (ECF No. 12 (citing 8 U.S.C. § 1252(g) ("§ 1252(g)"); *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022)).) The Court finds Respondents reliance on § 1252(g) and *Rauda* to be inapposite. In *Rauda*, the petitioner sought a TRO to prevent the Government from removing him from the United States. The Ninth Circuit affirmed the district court's finding that it lacked jurisdiction under § 1252(g) to reach petitioner's claim. Section 1252(g) strips a court of jurisdiction to enjoin the removal of a noncitizen when a noncitizen challenges the removal itself. Here, however, the basis of Petitioner's claim is not a challenge to a removal but rather, that his redetention is unconstitutional. As such, § 1252(g) is inapplicable, and the Court retains jurisdiction under the authority of the All Writs Act to issue such temporary injunctions as may be necessary to protect its own jurisdiction. *See F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966).

issuing a TRO even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

**III.     ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's Motion for a TRO.

        **A.     Likelihood of Success on the Merits**

Petitioner argues he is likely to succeed on his claim under the Due Process Clause of the Fifth Amendment. (ECF No. 9 at 2.) According to Petitioner, the Due Process Clause constrains Respondents' power to redetain a noncitizen released on bond without first providing a hearing before a neutral adjudicator where the government justifies the necessity of his redetention by clear and convincing evidence. (*Id.* at 16–17.) In opposition, Respondents argue the basis of Petitioner's detention is 8 U.S.C. § 1231(a)(6), which authorizes the detention of noncitizens who are removable due to an aggravated felony conviction and does not require a hearing requirement before such detention. (ECF No. 12 at 5.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003). Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v.*

*Thompson*, 490 U.S. 454, 460 (1989).  The Court considers each step in turn.

                *i.*        *Liberty Interest*

Petitioner argues, although he was released on bond under government custody, he retained a weighty liberty interest under the Due Process Clause in avoiding reincarceration.  (*Id.* at 18 (citing *Young v. Harper*, 520 U.S. 143, 146–147 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–782; *Morrissey v. Brewer*, 408 U.S. 471, 482–483 (1972)).)

In opposition, Respondents appear to argue that because § 1231(a)(6) — the statute governing detention and removal of noncitizens ordered removed — does not require a bond hearing before an immigration judge after six months of detention, Petitioner has no liberty interest in his continued release on bond.  (ECF No. 12 at 5 (citing *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 581 (2022).)

The Court agrees with Petitioner.  First, even if Respondent is correct and Petitioner was not entitled to an initial bond hearing under 8 U.S.C. § 1231(a)(6), he was granted one and released.  In *Johnson*, the Supreme Court stated that unlike federal agencies, "[r]eviewing courts are generally not free to impose [additional procedural rights] if the agencies have not chosen to grant them."  596 U.S. at 582.  Providing Petitioner with a bond hearing under these circumstances is not imposing an additional procedural right — it is merely upholding procedural rights Petitioner was already granted.  Moreover, as the Ninth Circuit has stated, following *Johnson*, "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) (emphasis in original); *see also Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, No. 1:24-CV-00998-EPG-HC, 2025 WL 1158841, at *5 (E.D. Cal. Apr. 21, 2025) (noting the same and finding a due process violation under the Fifth Amendment where an individual was detained pursuant to 8 U.S.C. § 1231(a)).

Here, as described further below, the Court finds the Due Process Clause does require additional procedures in the instant case.  Petitioner was released on bond by an immigration judge and then redetained without a hearing.  This goes against Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is

1 conditional, have a liberty interest in their continued release. *Morrissey*, 408 U.S. 471 at 482.
2 Given this, and the fact Petitioner is not asking the Court to impose additional procedural rights,
3 the Court finds Petitioner has established a strong likelihood of success in showing that he has a
4 liberty interest.

                *ii.*        *Procedural Due Process*

6 Having found a protected liberty interest, the Court examines what process is necessary to
7 ensure any deprivation of that protected liberty interest accords with the Constitution. To
8 determine such, the Court considers three factors: (1) "the private interest that will be affected by
9 the official action;" (2) "the risk of an erroneous deprivation of such interest through the
10 procedures used, and the probable value, if any, of additional or substitute procedural
11 safeguards;" and (3) "the Government's interest, including the function involved and the fiscal
12 and administrative burdens that the additional or substitute procedural requirement would entail."
13 *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[2]

14 As to Petitioner's private interest, he contends under *Morrissey*, individuals conditionally
15 released from serving a criminal sentence have a liberty interest that is "valuable," and argues that
16 principle applies with even greater force to individuals like him, who have been released pending
17 civil removal proceedings. (ECF No. 9 at 21 (citing *Morrissey*, 408 U.S. at 482).)

18 Petitioner further argues Respondents' interest, in contrast, is low and does not outweigh
19 his private interests. (*Id.* at 23–25.) Specifically, Petitioner contends Respondents' only interest
20 in holding an individual in immigration detention can be to prevent danger to the community or to
21 ensure a noncitizen's appearance at immigration proceedings. (*Id.* at 22 (citing *Zadvyas v. Davis*,
22 533 U.S. 679, 690 (2001)).) As to whether detention prevents danger, Petitioner argues his arrest
23 in May 2024 and resulting misdemeanor charges do not establish that he is a danger to the
24 community because the arrest or the charges, without more, are non-violent allegations that
25 Respondents have been aware of for over a year. (*Id.* at 22–23.) As to flight risk, Petitioner

---

[2] Respondent argues Petitioner's reliance on *Matthews v. Eldridge* is misplaced because Petitioner has not established a liberty interest in his release from custody. (ECF No. 12 at 7.) However, because the Court finds otherwise, the Court disregards this argument.

1   argues an immigration judge already determined that a bond of $3,000 and placement on release
2   conditions were sufficient to guard against any possible flight risk. (*Id.* at 23.) Petitioner further
3   contends his post-release conduct in the form of consistent attendance at his ICE check-in
4   requirements further confirm that he is not a flight risk. (*Id.*)

5   As to erroneous depravation, Petitioner contends no statutory mechanism provides him
6   any process before a neutral adjudicator following his detention and thus, the validity or necessity
7   of his redetention would evade any review by an immigration judge or any neutral arbiter. (*Id.* at
8   25.) Petitioner argues, by contract, the procedure he seeks — release from custody and
9   reinstatement of bond until he is provided a hearing in front of a neutral adjudicator at which
10  Respondents prove by clear and convincing evidence that his redetention is necessary — is much
11  more likely to produce accurate determinations regarding factual disputes, such as whether he is a
12  present danger or unmitigable risk. (*Id.* at 26.)

13  In opposition, Respondents argue first that any privacy interest Petitioner had was
14  impermeant given it "was automatically to expire upon execution of his order of removal." (ECF
15  No. 12 at 7.) Second, Respondents contend that the risk of erroneous deprivation of interest
16  through procedures used is minimal because there was a change of circumstances while Petitioner
17  was released on custody which is an "allude[d]" requirement before Petitioner can be re-detained.
18  (*Id.*) Third, Respondents maintain that the Government's interest is significant because Petitioner
19  is an aggravated felon noncitizen. (*Id.*)

20  The Court agrees with Petitioner. As to the first *Eldridge* factor — Petitioner's private
21  interest — Petitioner was out of custody on bond for two years prior to his redetention. (ECF No.
22  9 at 9.) During those two years, Petitioner was living with family and gainfully employed in food
23  service and event production. (*Id.*) The length of time and the connections Petitioner made with
24  his community during that time create a powerful interest for Petitioner in his continued liberty.
25  *See Doe v Becerra,* No. 2:25-cv-00647-DJC-DMC, 2025 WL 69166, at *5 (E.D. Cal. March 3,
26  2025).

27  As to the second *Eldridge* factor, the Court finds the risk of erroneous deprivation is
28  considerable. Petitioner was previously released on bond after it was determined he was not a

danger to the community or a flight risk. (ECF No. 9 at 12.) The revocation of that release should have been governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such a determination:

> The alien will be notified of the reasons for revocation of his or release. [] [ICE] will conduct an initial informal interview promptly after his or her turn to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation, stated in the notification. The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* at § 241.13(i)(3).

Here, Petitioner requests the Court enjoin Respondent from redetaining him unless a neutral adjudicator first holds a hearing and makes factual findings as to whether his redetention is warranted. (ECF No. 9.) Given that Petitioner was previously found to not be a danger or a flight risk, the risk of erroneous depravation without a hearing is high particularly here, where Petitioner explained during the hearing, there are serious concerns about the basis for his redetention and access to information to disprove the basis for his detention while in custody.

As to final *Eldridge* factor, the Court finds the Respondents' interest in placing Petitioner in detention without a hearing is low. The effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case. Thus, Respondents' burden does not outweigh Petitioner's substantial liberty interest and risk of erroneous depravation.

Having found Petitioner has a liberty interest and determined that due process requires Petitioner receive a hearing to determine whether detention is warranted, the Court finds that Petitioner has established a likelihood of success on the merits.

///

B. <u>Irreparable Harm</u>

Petitioner argues he will suffer irreparable harm were he to remain deprived of his liberty and subjected to continued incarceration. (ECF No. 9 at 26.) Specifically, Petitioner contends, during the two years he had been out of ICE custody, he returned to his family in Patterson, California, started dating his girlfriend, obtained work authorization and began working with six employers in the food and event production industries. (*Id.*) Petitioner argues if he remains incarcerated, he will lose out on upcoming jobs and the chance to earn needed income. (*Id.*) In addition, Petitioner argues every day he remains detained in a crowded facility impacts his emotional state, with him already feeling helpless and hopeless. (*Id.*)

In opposition, Respondents argue Petitioner has not articulated an irreparable harm that can only be remedied with immediate injunctive relief. (ECF No. 12 at 5.) Petitioner contends the fact that Petitioner has reentered immigration detention is not an extraordinary part of the removal process, particularly where the noncitizen has a criminal history. (*Id.*)

The Court finds Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. Prior to his redetention, Petitioner had been out of custody on bond for two years, during which time Petitioner appears to have made meaningful connections with his community. (ECF No. 9 at 9.) Despite being released on bond, Petitioner was redetained without the opportunity to be heard by a neutral adjudicator on whether redetention is warranted. Absent a review, it appears that Petitioner would remain in custody until final determination of his appeal. This violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement. *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025).

C. <u>Balance of Equities and Public Interest</u>

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

Petitioner argues Respondents cannot allege harm arising from a TRO or preliminary

9

injunction which orders Respondents it to comply with the Constitution. (ECF No. 9 at 28.) Petitioner further argues any burden imposed by requiring the Department of Homeland Security ("DHS") to release Petitioner from custody until he is provided notice and hearing before a neutral decisionmaker is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer as long as he continues to be detained. (*Id.*) Finally, Petitioner contends a TRO is in the public interest because otherwise, Respondents would effectively be granted permission to detain Petitioner in violation of the Due Process requirements. (*Id.*)

In opposition, Respondents argue Petitioner has a serious criminal history, which includes a crime against a child, a recent arrest and ongoing prosecution relating to two violations of the California vehicular code that pose a danger to the community.

The Court finds the balance of equities and public interest weighs in Petitioner's favor given that the Court has found that Petitioner has a strong likelihood of success on the merits based on his Constitutional claims and Respondent's lack of irreparable harm.

Therefore, the Court GRANTS Petitioner's Motion for a TRO and Motion for a Preliminary Injunction. (ECF No. 9.)

### IV.   CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that Petitioner's motion (ECF No. 9), construed as a motion for preliminary injunctive relief, is GRANTED. To return to the status quo — the last uncontested status which preceded the pending controversy — Respondents must immediately release Petitioner under the same conditions he was released previously. In addition, the Court finds, prior to any redetention of Petitioner, Petitioner is entitled to notice of the reasons for revocation of his release and a hearing before an immigration judge to determine whether detention is warranted. At the hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

//

//

//

The Court's July 4, 2025 Order (ECF No. 5) is HEREBY VACATED.

IT IS SO ORDERED.

Date: July 14, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE