1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Y.S.G.,

              Petitioner,

    v.

TONYA ANDREWS, et al.,

              Respondents.

No.  2:25-cv-1884-SCR

ORDER

Petitioner is a federal immigration detainee proceeding through counsel in this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  The parties have consented to the jurisdiction of the undersigned for all further proceedings.  ECF No. 26.  Currently pending before the court is petitioner's motion to enforce the preliminary injunction issued on July 14, 2025, and respondents' motion to dismiss the § 2241 petition as moot.  ECF Nos. 28, 29.  The motions are fully briefed.  The court heard the motions on October 16, 2025.  For the reasons explained in further detail below, the court denies respondents' motion to dismiss, grants petitioner's motion to enforce the preliminary injunction, and orders respondents to release petitioner and not redetain him unless they provide him a bond hearing that complies with the preliminary injunction.

## I.    Factual and Procedural History

Petitioner was born in 1992 in Mexico and came to the United States when he was

1  approximately four years old.  ECF No. 1-2 at 10 (Declaration of Y.S.G.).  Since that time, he

2  resided in Patterson, California, where he graduated from high school before attending

3  community college in Hayward, Livermore, and Modesto.  ECF No. 1-2 at 10.

4        In 2012, U.S. Citizenship and Immigration Services ("USCIS") granted petitioner's

5  application for Deferred Action for Childhood Arrivals ("DACA").  ECF No. 1-2 at 2

6  (Declaration of Lydia Sinkus).  He renewed his DACA application in 2015 and 2018, but USCIS

7  denied his renewal application in 2021 on account of a criminal conviction discussed below.  ECF

8  No. 1-2 at 10.  In 2022, he applied for a U Visa based on being the victim of a crime.  ECF No. 1-

9  2 at 10.  That application remains pending with USCIS.  Id.

10        On September 14, 2022, U.S. Immigration and Customs Enforcement ("ICE") originally

11  took petitioner into civil immigration custody outside of his home.  ECF No. 1-2 at 2, 10.  ICE

12  issued him a Notice of Intent to Issue a Final Administrative Removal Order ("FARO") that

13  alleged that (1) he was not a citizen of the United States, (2) that he was not lawfully admitted or

14  paroled into the United States, and (3) that on June 9, 2020, he sustained a felony conviction for

15  attempted lewd or lascivious acts (California Penal Code §§ 664/288(A)) in San Joaquin County

16  Superior Court for which he received an eighteen-month sentence.  ECF No. 1-2 at 59-61.  On the

17  same date, ICE also issued the FARO, which removal order furnishes the statutory authority for

18  petitioner's detention pursuant to 8 U.S.C. § 1231.  ECF No. 1-2 at 3, 57 (FARO), 59 (Notice of

19  Intent to Issue a FARO).

20        Petitioner requested asylum and withholding of removal based on his fear of persecution if

21  returned to Mexico, as well withholding of removal under the Convention Against Torture

22  ("CAT").  ECF No. 1-2 at 3, 10.  An asylum officer found that he established a "reasonable" fear

23  of persecution and referred his grounds for withholding of removal to an Immigration Judge

24  ("IJ").  The IJ denied petitioner's applications on March 15, 2023.  Id.  With the assistance of

25  counsel, petitioner appealed the IJ denial on April 10, 2023.  ECF No. 1-2 at 4.  He also filed a

26  motion to remand on May 2, 2024.  Id.  Both his appeal and motion to remand remain pending

27  before the Board of Immigration Appeals ("BIA").  Id.

28

On May 18, 2023, petitioner filed a motion for a bond redetermination hearing.[1]  ECF No. 32-1.  Petitioner included letters from his family, friends, coworkers, and church members who represent his support network in the community.  ECF Nos. 32-2 at 14-121; 32-3; 32-4. Petitioner also submitted a report from Dr. Nicholas Nelson, the Medical Director of the Human Rights Clinic at the University of California, San Francisco, who evaluated petitioner based on his past trauma.  ECF No. 32-2 at 83-96.  Dr. Nelson has served as an expert witness in asylum hearings in federal immigration court.  ECF No. 32-2 at 84.  He evaluated petitioner's "mental health and its relationship to his history of physical and emotional trauma" while he was in immigration detention.  Id. at 84-85.  The report details three specific traumatic events in petitioner's history beginning in 2008 and most recently in 2019, which included a head injury where he lost consciousness after falling three stories from a building.  Id. at 86.  According to Dr. Nelson, petitioner's symptoms of Post-Traumatic Stress Disorder ("PTSD") are much improved "with the passage of time, and at this point it would be appropriate to diagnose him with PTSD in remission."  Id. at 89.  In addition to this clinical evaluation, petitioner also submitted a letter from Manuel Ortiz, LCSW, that contained a detailed re-entry plan upon petitioner's release including: 1) housing and familial support; 2) sex offender and mental health treatment; 3) education and employment; and, 4) pro-social activities and supports.  Id. at 98-102; see also id. at 104-106 (petitioner's hand-written release plan).

On May 25, 2023, an IJ found that the government had failed to establish that petitioner posed a risk of danger or flight by clear and convincing evidence and ordered his release on a $3,000 bond and release conditions (i.e. "alternatives to detention," known as ATD).  ECF No. 1-2 at 3, 28-29 (Order of the IJ).  ICE released him the same day on the conditions that he wear an electronic ankle monitor, check-in regularly with ICE, and participate in the Intensive Supervision Appearance Program ("ISAP").  ECF No. 1-2 at 3, 20 (ICE Order of Supervision).

In April 2024, petitioner was discharged from state parole based on his 2021 conviction

---

[1]  This hearing was requested pursuant to Aleman Gonzalez v. Sessions, 325 F.R.D. 616 (N.D. Cal. 2018) (granting class certification and a preliminary injunction), aff'd sub. nom. Aleman Gonzalez v. Barr, 955 F.3d 762 (9th Cir. 2020), rev'd and remanded sub. nom. Garland v. Aleman Gonzalez, 596 U.S. 543 (2022).

1    after he successfully completed required courses.  ECF No. 1-2 at 12, 34 (Certificate of

2    Discharge); ECF No. 28-1 at 116 (Referral Source Completion Notice for Eighteen Month DUI

3    Program).

4        Local police arrested petitioner in May 2024 in Stanislaus County on misdemeanor

5    charges of driving with a suspended license and operating a vehicle without an ignition interlock

6    device.  ECF No. 1-2 at 12, 66 (Criminal Complaint).  He reported to the ISAP office following

7    his release from police custody and was re-fitted for a new ankle monitor.  Id.  Petitioner

8    continued his in-person check-ins at ICE field offices in November 2024 and March 20, 2025.

9    ECF No. 1-2 at 18, 21, 24.  Based on his ongoing check-ins, petitioner was deescalated from an

10   ankle monitor to a smartwatch in March 2025.  ECF No. 1-2 at 12-13.  His next regular in-person

11   check-in was scheduled for June 20, 2025.  ECF No. 1-2 at 24 (Personal Report Record).  But on

12   May 27, 2025, petitioner was told to report to the ISAP office in Stockton the next day to have his

13   watch checked.  ECF No. 1-2 at 14.  He reported on May 28, 2025 and was taken into ICE

14   custody while at the ISAP office.  Id.

15       During his two-year period of ISAP release, from May 2023 through May 2025, petitioner

16   continued to live with family in Patterson, California.  ECF No. 1-2 at 11.  He obtained a work

17   permit and was employed with six different employers in event production and food service.  Id.

18       In his § 2241 petition, petitioner contends that ICE violated his Fifth Amendment right to

19   due process by redetaining him without a  "pre-deprivation hearing" to determine whether such

20   detention is warranted.  ECF No. 1 at 39.  Petitioner argues that he has a protected liberty interest

21   in conditional release that is comparable to a parolee.  See ECF No. 1 at 26-29.  The three-part

22   test articulated in Matthews v. Eldridge should apply.  According to petitioner, Matthews

23   "required a pre-deprivation hearing before a neutral adjudicator, which ICE failed to provide."

24   Id. at 30.  Petitioner submits that "[t]he existence of non-violent allegations that the agency has

25   been aware of since May 2024 did not significantly increase the government's interest in

26   detaining him in May 2025, and it certainly did not increase that interest enough to outweigh the

27   private interests at stake in this case."  Id. at 33-34.  With respect to flight risk, petitioner points

28   out that "the government has not proffered an itemized list of the supposed violations, nor has it

4

1    provided [petitioner] an opportunity to respond to these allegations." Id. at 34.

2    **II.    Motion for a Preliminary Injunction**

3    Petitioner filed a motion for a temporary restraining order and a preliminary injunction

4    concurrently with his § 2241 petition.  ECF No. 2.  Following briefing and a hearing on the

5    motion, as subsequently amended, ECF No. 9, Chief Judge Nunley granted petitioner's motion

6    for a preliminary injunction.  Judge Nunley's order required respondents to release petitioner and

7    to provide him with prior notice of the reasons for the revocation of his release and a hearing

8    before an immigration judge where the government has the burden of establishing by clear and

9    convincing evidence that petitioner poses a danger to the community or a risk of flight.  ECF No.

10    14.

11    After the court issued the preliminary injunction, ICE released petitioner on July 14, 2025.

12    ECF No. 28-1 at 2 (Declaration of Lydia Sinkhus).  He returned to live with his parents in

13    Patterson and was placed back on ISAP supervision, which included an ankle monitor.  Id.

14    On August 14, 2025, the Department of Homeland Security ("DHS") filed a motion to

15    conduct a "pre-deprivation bond hearing" in the Adelanto Immigration Court.  ECF No. 28-1 at 6-

16    8.  DHS requested that petitioner be redetained based on "over thirty" violations of the ATD

17    program, a statement petitioner made indicating that he would no longer comply with the

18    program, and his May 2024 arrest for driving on a suspended license and driving without an

19    ignition interlock device.  ECF No. 28-1 at 7.

20    **A.    Evidence Submitted to IJ in Support of Re-Detention**

21    As part of the motion, DHS submitted petitioner's criminal history report, referred to as a

22    "RAP sheet;" the IJ decision from March 15, 2023 denying petitioner's applications for

23    withholding of removal; petitioner's filing receipt of an appeal to the BIA dated April 10, 2023;

24    the IJ order from May 25, 2023 granting petitioner's release on bond; petitioner's Form I-213

25    (Record of Deportable Alien);[2] and this court's order granting a preliminary injunction.  ECF No.

26    28-1 at 9-48.  The RAP sheet indicated that petitioner has a misdemeanor conviction for DUI in

27

28    _____
     [2]  The IJ decided not to admit the I-213 into the record at the pre-deprivation hearing.

May 2016; an August 2016 misdemeanor conviction for driving on a suspended license; another misdemeanor conviction for driving with a blood alcohol concentration greater than 0.08 percent in July 2019; a February 2021 felony conviction for attempted lewd or lascivious acts with a minor under 14 years old; an April 2021 misdemeanor for obstructing a public officer; and a July 2022 felony parole violation.  ECF No. 28-1 at 11-17.  Petitioner's RAP sheet also showed two pending misdemeanor charges for driving on a suspended license and driving without an ignition interlock device.  ECF No. 28-1 at 16.  Notably, DHS did not submit any evidence of petitioner's purported violations of the ATD program while on bond nor any details pertaining to petitioner's purported statement that he was no longer willing to comply with the supervision program.

On August 20, 2025, the Adelanto Immigration Court issued a notice of custody redetermination hearing for August 27, 2025.  ECF No. 28-1 at 51.

**B.      Evidence Submitted to IJ in Opposition to Re-Detention**

Prior to the hearing, petitioner submitted over 150 pages of evidence in support of his lack of current dangerousness and flight risk.  See ECF No. 28-1 at 91-317.  In his supporting declaration, petitioner describes the steps that he took in the two plus years while released on bond to obtain gainful employment, enhance his education, and participate in rehabilitation classes and programs.  ECF No. 28-1 at 96-102.  During the first year of his ISAP supervision, petitioner was also on state parole supervision.  ECF No. 28-1 at 97.  As a result, petitioner was wearing two separate ankle monitors, attending both individual and group therapy sessions through the HOPE program, taking polygraph and drug tests routinely, and subject to a curfew, home visits and travel restrictions.  ECF No. 28-1 at 97; see also ECF No. 28-1 at 106-111 (Notice and Conditions of Parole).  Petitioner's declaration also describes in detail the steps that he took to comply with ISAP while on bond and the technical glitches that he experienced in using the required smartwatch monitor.  ECF No. 28-1 at 99-100; see also ECF No. 28-1 at 133-139 ("Poor tech, opaque rules, exhausted staff: inside the private company surveilling US immigrants," THE GUARDIAN, March 7, 2022).  With respect to the supposed ISAP violations, petitioner indicates that he was told "everything was fine" when he attended his regularly scheduled ISAP appointments and in-person ICE check-ins and that he is "concerned many of

these are a mistake or a misunderstanding."  ECF No. 28-1 at 100-101; <u>see also</u> ECF No. 28-1 at 131 (ICE Letter dated December 13, 2023 indicating that petitioner "has been compliant with all requirements" of supervision); ECF No. 28-1 at 141 (Petitioner's Personal Report Record of Supervision).

With respect to his May 2024 misdemeanor charges, petitioner indicates that he is working with his county public defender and that he had attended all his court dates over the past year while out of ICE custody in order to resolve them.  ECF No. 28-1 at 98.  Additionally, petitioner indicates that he reported these charges to his ISAP officer as soon as he was released from jail and that he physically reported to the ISAP office on the same day to obtain a new ankle monitor.  ECF No. 28-1 at 99; <u>see also</u> ECF No. 28-1 at 247 (Letter from Deputy Public Defender indicating that petitioner has been advised "to not discuss his pending charges in other tribunals before they have been resolved.").  Petitioner also submitted evidence of his pending U Visa petition.  ECF No. 28-1 at 238-245.  In December 2024, petitioner also completed his eighteen month DUI rehabilitation classes.  <u>Id.</u>; <u>see also</u> ECF No. 28-1 at 116.

Petitioner submitted additional evidence supporting his release, including letters from family members, past and present employers, as well as friends to demonstrate his substantial ties to the community.  ECF No. 28-1 at 118-123, 150-203, 284-286.  This evidence also included proof of petitioner's successful completion of educational programs as well as his state parole and rehabilitative programming to address the factors that led to his past criminal convictions.  ECF No. 28-1 at 104-116, 125-126, 252-264.

### III.    August 2025 IJ Pre-Deprivation Hearing[3]

An IJ held petitioner's pre-deprivation hearing on August 27, 2025 via video conferencing.  ECF No. 28-1 at 320-332 (transcription of audio recorded hearing).  The IJ's written order followed on August 29, 2025.  ECF No. 28-1 at 304-313.  At the outset of the order, the IJ acknowledged that this court required an individualized bond hearing in which DHS "shall bear the burden of establishing by clear and convincing evidence, that [Y.S.G.] poses a danger to

---

[3]  For the sake of clarity, all references to "respondent" in the bond proceedings before the IJ have been modified to "petitioner" or "Y.S.G." because he is the petitioner in proceedings in this court.

the community or a risk of flight." ECF No. 28-1 at 304, 307. Next, the IJ ruled on a venue issue

that is not before this court.[4] ECF No. 28-1 at 304-05. Prior to explaining the basis for the bond

decision, the IJ recounted the evidence submitted by both petitioner and DHS and ruled on

petitioner's objections to the RAP sheet and Form I-213. ECF No. 28-1 at 305-06.[5] The IJ did

not admit Form I-213 into the record. Id. at 306. At the outset of the analysis section, the IJ

indicated that she "'has extremely broad discretion' in deciding whether to release a respondent

on bond" and in determining any specific bond amount. ECF No. 28-1 at 307 (citations omitted).

### A.    Danger to the Community

In assessing whether petitioner is a danger to the community, the IJ considered the

"recency, extent, and seriousness" of his criminal record. ECF No. 28-1 at 307. The IJ noted that

petitioner had been released on an immigration bond in May 2023 after serving the sentence for

his most serious conviction and that while on bond he "engaged in various court and agency-

ordered programming, including sex offender treatment programming, drug testing, monitoring

by [ICE], and restrictions on his travel." ECF No. 28-1 at 308. Then, the IJ focused on

petitioner's newest misdemeanor charges from April 2024 and emphasized that petitioner "did

not describe the facts and circumstances of these arrests in his written declaration and has not, for

example, professed himself to be factually innocent." Id. Based on all this evidence, the IJ

concluded that petitioner's criminal record is "extensive and serious" because it includes a drunk

driving offense. Id. at 309; see also Id. at 310 (emphasizing that petitioner did not argue "that he

is factually innocent *vis a vis* these alleged violations."). The IJ did acknowledge that the victim

of petitioner's conviction for attempted lewd and lascivious conduct was not a minor, but an

---

[4] Prior to the pre-deprivation hearing, petitioner filed a motion to change the venue to the San Francisco Immigration Court's nondetained docket. Because the preliminary injunction did not address venue, the denial of petitioner's change of venue motion plays no part in the court's analysis of petitioner's motion to enforce the preliminary injunction.

[5] The IJ's description of the DHS's exhibits includes a reference to "documents from Respondent's reasonable fear interview (RFI) before the Asylum Office and pertaining to his administrative order of removal…." However, no such documents were listed as exhibits by DHS in their Motion to Set Pre-Deprivation Bond Hearing. See ECF No. 28-1 at 9. Nor did respondents file any documents in this court pertaining to petitioner's RFI.

undercover law enforcement agent.  Id.  Despite the evidence of rehabilitative programming and documentation of his mental health condition, the IJ found that "the explanation for his behaviors does not make the behaviors themselves any less dangerous to the community."  Id. at 310 (citation omitted).  As a result, the IJ found that "the Department has proven by clear and convincing evidence that [Y.S.G.'s] release would pose a danger to the community" and that no amount of bond was appropriate in this case.  Id.

### B.    Flight Risk

The IJ made additional findings that "the Department had proven by clear and convincing evidence that [Y.S.G.] is such a significant flight risk that no bond or non-monetary release conditions could sufficiently mitigate that risk."  ECF No. 28-1 at 310.  Part of the IJ's analysis with respect to flight risk centered on the fact that petitioner "is in withholding-only proceedings" and that the IJ had already denied him withholding of removal which petitioner had appealed to the BIA.  Id. at 311.  In determining that petitioner's "likelihood of prevailing" on appeal was "exceedingly speculative," the IJ took administrative notice of the basis for the IJ's oral decision denying petitioner withholding of removal.  Id. at 311 n. 2.  This oral decision is not a part of the administrative record before this court.  In reviewing the oral decision, the IJ suggested additional bases upon which petitioner could be denied all forms of withholding relief even if his BIA appeal resulted in a successful remand to the IJ.  Id.  Although the IJ acknowledged that petitioner also had a U Visa petition pending, she described this form of relief as "exceedingly speculative, as is the timeline for that benefit's adjudication."  Id. at 312.  The IJ did not provide any analysis as to why this form of relief was unlikely in petitioner's case.  Id.  Additionally, the IJ cited to petitioner's "disregard for rules and regulations imposed by state authorities subsequent to his criminal convictions," as relevant evidence of his flight risk.  Id.  Accordingly, the IJ denied petitioner bond on this additional independent basis.

### C.    Subsequent Events

Petitioner filed an appeal of the IJ's bond determination to the BIA, but has not yet received a briefing schedule on appeal.  ECF No. 28-1 at 3.  According to petitioner's immigration counsel, appeals of this nature typically take three to six months to be resolved.  ECF

1    No. 28-1 at 3.

2         Based on the IJ's decision, ICE rearrested petitioner y on September 4, 2025, after he

3    reported as instructed to an ISAP office.  ECF No. 28-1 at 3 (Sinkhus Declaration).  Petitioner

4    remains in immigration custody, at a detention center in Kern County.  Id.

5         **IV.    Parties' Motions**

6              **A.  Motion to Enforce Preliminary Injunction**

7         On September 19, 2025, petitioner filed a motion to enforce the court's preliminary

8    injunction.  ECF No. 28.  Petitioner contends that the IJ's decision denying petitioner bond failed

9    to comply with the court's preliminary injunction because she misapplied the law and did not

10   hold the government to its heavy burden of proof.  ECF No. 28.  "The clear and convincing

11   standard requires that evidence must establish 'an abiding conviction that the truth of [the] factual

12   contentions at issue is highly probable.'"  ECF No. 28 at 10 (citing Mondaca-Vega v. Lynch, 808

13   F.3d 413, 422 (9th Cir. 2015) (en banc)).  Petitioner asserts that the IJ applied the wrong standard

14   because she was treating the hearing as a discretionary bond redetermination request rather than a

15   Constitutionally mandated due process hearing where respondent had the burden.  ECF No. 28 at

16   12-13.

17        Additionally, the IJ failed to comply with the scope of review required by the preliminary

18   injunction.  Id. at 13.  Petitioner contends that the preliminary injunction was granted due to the

19   "serious concerns about the basis for his redetention and access to information to disprove the

20   basis for his detention while in custody."  ECF No. 14 at 8.  "DHS offered no admissible evidence

21   regarding the reasons stated by agency for [Y.S.G.]'s re-detention—the alleged ATD violations

22   and statement regarding compliance with release conditions, as well as Petitioner's May 2024

23   arrests.  That is because the IJ excluded DHS's evidence related to ATD violations and DHS[]

24   failed to include any evidence relating to the circumstances of Petitioner's May 2024" arrest.

25   ECF No. 28 at 13.  What remained was petitioner's prior convictions, which another IJ had

26   already determined did not establish clear and convincing evidence of petitioner's risk of danger

27   or flight to warrant his ongoing detention.  ECF No. 28 at 13-15.

28        Petitioner also submits that the IJ improperly shifted the burden to petitioner to submit

1   evidence of his innocence on his pending misdemeanor charges.  ECF No. 28 at 15-16.  This

2   placed petitioner in a constitutional quandary by having to give up his Fifth Amendment right to

3   remain silent in order to secure his liberty from confinement.  Id. at 16.

4          Finally, petitioner argues that the IJ failed to comply with the court's preliminary

5   injunction because she was not a neutral and impartial adjudicator.  ECF No. 28 at 20-21.  As a

6   remedy, petitioner requests that he be immediately released from immigration custody and that

7   respondents be enjoined from detaining him "during the pendency of these proceedings."  ECF

8   No. 28 at 25.

9              **B.  Motion to Dismiss/Return to Petition/Opposition to Motion to Enforce**

10         On September 29, 2025, respondents filed a combined motion to dismiss, return to the

11  2241 petition, as well as opposition to petitioner's motion to enforce the preliminary injunction.

12  ECF No. 29.  Respondents request that the § 2241 be dismissed based on lack of subject matter

13  jurisdiction, or, in the alternative, that the petition be denied on the merits.  ECF No. 29 at 2.

14  First, respondents submit that there is no remaining case or controversy for the court to adjudicate

15  because petitioner has been granted all the relief he requested in his § 2241 application.  ECF No.

16  29 at 5-6.  Since his "release from detention, and subsequent bond hearing that conformed with

17  the Court's order," the case is now moot.  Id.  Alternatively, respondents argue that the § 2241

18  should be dismissed as premature because petitioner has not exhausted his administrative

19  remedies with the BIA.  ECF No. 29 at 6.  Finally, without conceding that a bond hearing was

20  constitutionally required, respondents contend that petitioner's bond hearing satisfied due process

21  and complied with the court's preliminary injunction.  Id. at 6.  "This Court lacks the authority to

22  reassess the evidence presented at the bond hearing and come to a different conclusion, which is

23  the thrust of what YSG is now seeking, albeit cloaked in constitutional garb."  Id. at 7.  Applying

24  the three-part standard of Mathews v. Eldridge, 424 U.S. 319, 333 (1976), respondents argue that

25  petitioner has received all the process that he is due as a noncitizen who is in removal

26  proceedings.  Id. at 7-9.  To the extent the court finds otherwise, respondent submits that the only

27  available relief is another bond hearing before an IJ.  Id. at 11.

28  ////

1                           **C. Petitioner's Opposition to MTD/Reply**

2          By way of reply to respondents' omnibus motion, petitioner first indicates that the habeas

3   petition is not moot because petitioner has been re-detained.  ECF No. 30 at 2.  "The question is

4   not whether the precise relief sought at the time the case was filed is still available, but whether

5   there can be *any effective relief*."  ECF No. 30 at 2 (quoting <u>Bayer v. Neiman Marcus Grp.</u>, 861

6   F.3d 853, 862 (9th Cir. 2017) (emphasis added)).  Petitioner seeks the same relief at present that

7   he did when he first filed the § 2241 petition, namely, his immediate release from immigration

8   custody along with a bond hearing that complies with due process prior to any future detention.

9   <u>Id</u>.  Petitioner also argues that his incarceration constitutes a collateral consequence that creates a

10  live controversy.  <u>Id</u>. at 4.

11         As for the exhaustion of administrative remedies, petitioner contends that the court does

12  not have to await the outcome of the BIA appeal before enforcing its preliminary injunction

13  order.  ECF No. 30 at 4.  Petitioner further submits that exhaustion should be waived in this case

14  because he will suffer irreparable injury, there is an inadequate administrative remedy, and

15  because administrative proceedings are futile due to the length of time that they take to resolve.

16  ECF No. 30 at 4-5.  According to petitioner, the BIA appeal of the IJ's bond determination will

17  take three to six months to be resolved.  <u>See</u> ECF No 28-1 at 3 (Sinkhus Declaration).

18         On the merits of the IJ's bond determination, petitioner emphasizes that he is not asking

19  the court to reweigh the evidence presented.  ECF No. 30 at 7.  Instead, petitioner ask the court to

20  determine "whether the IJ applied the proper standard of review, whether the IJ inappropriately

21  placed the burden of proof on the noncitizen, and whether the quantum of evidence (bond record)

22  failed to demonstrate by clear and convincing evidence that the noncitizen was a danger or flight

23  risk."  <u>Id</u>. at 7.  In this case, petitioner asserts that he has rebutted the presumption that the IJ

24  reviewed all of the evidence related to dangerousness and flight risk.  <u>Id</u>. at 9.  According to

25  petitioner, "the IJ failed to apply the proper standard and scope to the hearing, shifted the burden

26  of proof onto Petitioner, and failed to consider probative and potentially dispositive evidence."

27  <u>Id</u>. at 9.

28  ////

1  **V.      Analysis**

2      **A.  Motion to Dismiss**

3          **1.  Mootness**

4          Article III, Section 2 of the Constitution limits federal courts to the adjudication of actual,

5  ongoing controversies between litigants.  <u>Deakins v. Monaghan</u>, 484 U.S. 193, 199 (1988).  "The

6  case-or-controversy requirement demands that, through all stages of federal judicial proceedings,

7  the parties continue to have a personal stake in the outcome of the lawsuit."  <u>United States v.</u>

8  <u>Verdin</u>, 243 F.3d 1174, 1177 (9th Cir. 2001) (internal quotation marks and citation omitted).

9  "The basic question in determining mootness is whether there is a present controversy as to which

10  effective relief can be granted."  <u>Ruiz v. City of Santa Maria</u>, 160 F.3d 543, 549 (9th Cir. 1998).

11  Respondents bear the burden of demonstrating the lack of any effective relief that the court can

12  provide.  <u>See Forest Guardians v. Johanns</u>, 450 F.3d 455, 461 (9th Cir. 2006).

13          Although petitioner was released from immigration custody based on the issuance of the

14  preliminary injunction in this case, his liberty is once again restrained.  In essence, petitioner has

15  been placed back into the situation he was in at the time that he filed this § 2241 petition – he

16  argues that respondents have detained him without showing by clear and convincing evidence that

17  his detention is warranted.  Petitioner contends that this case is not moot because the court can

18  still order his release from immigration custody and require the IJ to conduct a bond hearing that

19  complies with due process.  "[D]istrict courts have continuing jurisdiction to enforce their

20  injunctions."  <u>Crawford v. Honig</u>, 37 F.3d 485 (9th Cir.1994). At a minimum, the court

21  accordingly has jurisdiction to determine whether respondents have complied with the

22  preliminary injunction.  Moreover, the immigration detention cases involving mootness that

23  respondent cites are materially distinguishable for the reasons identified by petitioner.  ECF No.

24  30 at 3.  On the current posture of the case—where petitioner is again detained and argues such

25  detention violates the preliminary injunction—respondents have not met their burden of

26  demonstrating mootness.  The motion to dismiss is denied.

27          **2.  Exhaustion of Administrative Remedies**

28          The federal habeas statute under which this case was filed does not require exhaustion of

administrative remedies.  <u>Compare</u> 28 U.S.C. § 2241 <u>with</u> 28 U.S.C. § 2254(b)(1)(A) (requiring

exhaustion of state court remedies).  Courts may require exhaustion as a prudential matter when

"(1) agency expertise makes agency consideration necessary to generate a proper record and

reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass

of the administrative scheme; and (3) administrative review is likely to allow the agency to

correct its own mistakes and to preclude the need for judicial review."  <u>Noriega-Lopez v.

Ashcroft</u>, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted).  The exhaustion requirement may

be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative

remedies would be a futile gesture, irreparable injury will result, or the administrative

proceedings would be void."  <u>Laing v. Ashcroft</u>, 370 F.3d 994, 1000 (9th Cir. 2004).

Petitioner asserts that the exhaustion requirement should be waived based on irreparable

injury.  In granting the preliminary injunction, the district judge determined that petitioner had

demonstrated irreparable harm based on his redetention.  ECF No. 14 at 9.  After having been

released on bond for two years, petitioner had obtained a work permit as well as employment with

six different companies.  ECF No. 14 at 9.  He had also developed significant social ties to his

community.  <u>Id</u>.  Based on his redetention, petitioner lost both job and career development

opportunities as a manager in his field of employment.  ECF No. 28-1 at 65, 100-102.  He has

also experienced emotional and psychological harm as a result of his redetention.  <u>Id</u>.

Relief from the prudential exhaustion requirement is warranted in this case for multiple

reasons.  First, petitioner has adequately demonstrated that irreparable injury will result if he has

to await the outcome of his BIA appeal.[6]  No briefing schedule has been set for his appeal, and

even petitioner's counsel estimates that it will take up to six months to receive a decision.

Moreover, it is not at all clear that the BIA could evaluate the legality of the IJ's bond

determination in relation to this court's preliminary injunction order—the BIA has, for example,

consistently refused to reach and decide constitutional questions.  <u>See</u> <u>Matter of Fede</u>, 20 I&N

Dec. 35 (BIA 1989) (explaining why neither an IJ nor the BIA have the legal authority to

---

[6]  In the interests of judicial economy, the court finds it unnecessary to address petitioner's
remaining arguments justifying the waiver of the exhaustion of administrative remedies.

1    consider constitutional challenges to the immigration regulations they administer); Matter of

2    Fuentes-Campos, 21 I&N Dec. 905, 912 (BIA 1997) ("[E]ven if we were to perceive a

3    constitutional infirmity in the unambiguous statute before us, we would be without authority to

4    remedy it.").  In light of the BIA's scope of review, administrative remedies in this case are not

5    adequate to resolve petitioner's due process challenge to the IJ's bond determination.  For all

6    these reasons, the exhaustion of administrative remedies is deemed waived in this case.  See

7    Hernandez v. Sessions, 872 F.3d 976, 988–89 (9th Cir. 2017) (affirming district court decision to

8    waive exhaustion requirement in constitutional challenge to detention hearings); see also Mau v.

9    Chertoff, 562 F.Supp.2d 1107, 1113–14 (S.D. Cal. 2008) (finding administrative exhaustion did

10    not preclude a motion to enforce the district court's prior order because the BIA did not have

11    authority to enforce the federal court's judgment).

12                **B.  Motion to Enforce the Preliminary Injunction**

13            Judge Nunley's preliminary injunction order required respondents to provide petitioner

14    with prior "notice of the reasons for the revocation of his release and a hearing before an

15    immigration judge to determine whether detention is warranted" where the government "shall

16    bear the burden of establishing by clear and convincing evidence, that Petitioner poses a danger to

17    the community or a risk of flight."  ECF No. 14 at 10.  The crux of the dispute is the IJ's

18    application of the clear and convincing standard.[7]  Petitioner argues that even though the IJ stated

19    she was holding DHS to a clear and convincing burden, she did not actually apply that high

20    standard.  Petitioner further argues that DHS did not demonstrate danger or flight risk by clear

21    and convincing evidence as a matter of law and that the IJ engaged in other constitutional error.

22    Respondents argue that they did exactly what Judge Nunley ordered: they convened a hearing

23    before an IJ who—relying only on evidence that was provided to petitioner in advance of the

24    _____

25    [7]  As noted above, DHS moved to re-detain petitioner based in part on his alleged violation of the
     conditions of the ATD program and alleged statement that he would no longer comply with
26    supervision.  However, respondents did not produce specific evidence connected to those
     allegations in advance of the August 2025 hearing.  The only purported evidence where vague
27    statements in the I-213, which the IJ excluded.  While it is troubling that DHS has still not
     provided petitioner meaningful notice concerning these alleged violations, because the IJ did not
28    rely on DHS's supervision-related allegations, the court does not further address them in this
     order.

                                                        15

1  hearing—found petitioner to be a danger and risk of flight by clear and convincing evidence.  As

2  explained below, the court finds respondents did violate the preliminary injunction when the IJ

3  failed to meaningfully apply the clear and convincing standard and committed other error integral

4  to the proper implementation of that standard.

5                  **1.  Legal Standards**

6          A district court has continuing jurisdiction to enforce its injunction.  See Crawford, 37

7  F.3d at 488.  The party seeking to enforce the injunction has the burden of showing by clear and

8  convincing evidence that the enjoined party violated a specific provision of the court's order.  Kia

9  America, Inc. v. Rally Auto Group, Inc., Case No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011

10  at *2 (C.D. Cal. Oct. 20, 2022) (citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir.

11  1999)).  The language in an injunction should be clear such that ordinary persons will know

12  "precisely" what action is proscribed in order to provide sufficient notice to the party being

13  enjoined.  Clark v. Coye, 60 F.3d 600, 604 (9th Cir. 1995).  "[A]ll ambiguities are resolved in

14  favor of the person [or entity] subject to the injunction."  United States v. Holtzman, 762 F.2d

15  720, 726 (9th Cir. 1985).

16          The standard of review must also account for the fact that what is being reviewed here is

17  an immigration judge's determination of danger and flight risk.  In constitutional challenges to an

18  IJ's detention determination, a habeas court generally reviews mixed questions of fact and law

19  under an "abuse of discretion" standard.  Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024).

20  "[A]buse of discretion" review does involve "reweigh[ing] evidence" but rather determining

21  whether the IJ "applied the correct legal standard."  Id. (citation and quotations omitted).  In other

22  words, "[i]n reviewing the IJ's determination, a district court['s] … review is limited to whether

23  the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'"  Quan v.

24  Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v.

25  Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal

26  citation and quotation omitted)).  The reviewing court must bear in mind that "the government's

27  discretion to incarcerate non-citizens is always constrained by the requirements of due process."

28  Hernandez, 872 F.3d 976, 981 (9th Cir. 2017).  Moreover, a habeas court reviews pure questions

1    of law de novo.  See Singh v. Holder, 638 F.3d 1196, 1202-03 (9th Cir. 2011).

2           Incorporating the two standard of review doctrines discussed above, the court will

3    determine whether petitioner has shown clearly and convincingly that the IJ abused her discretion

4    in determining that petitioner is dangerous or a flight risk by clear and convincing evidence.  The

5    court will also determine whether petitioner has shown clearly and convincingly that the IJ

6    engaged in pure legal error prohibited by the preliminary injunction.

7           **2.  Analysis**

8                   **a.  Danger to the Community**

9           As to petitioner's dangerousness, the IJ abused her discretion by failing to meaningfully

10   apply the clear and convincing standard and by committing other legal error integral to the proper

11   implementation of that standard in this context.  As a threshold matter, the IJ erred by proceeding

12   as if this were a generic bond hearing in which an IJ exercises broad discretion.  The IJ stated she

13   has "'extremely broad discretion' in deciding whether to release a [non-citizen] on bond[.]"  ECF

14   No. 28-1 at 307 (quoting Matter of Guerra, 24 I&N Dec. 37, 39 (BIA 2006)).  That may be true in

15   a generic bond proceeding under 8 U.S.C. § 1226.  But as explained in Martinez, it is not true in a

16   constitutionally mandated proceeding involving a heightened burden on DHS like the one at issue

17   in this case.  Just as in Martinez, here a habeas court had already ruled that "due process requires

18   the government to show by clear and convincing evidence that the detainee presents a flight risk

19   or a danger to the community at the time of the bond hearing."  Martinez, 124 F.4th at 784

20   (quoting Martinez v. Clark, 2019 WL 5962685, at *1 (W.D. Wash. Nov. 13, 2019)).  "That

21   determination did not leave room for an added layer of agency discretion;" if the IJ "found that

22   [petitioner] was not dangerous, [the IJ] would have had to release him."  Id.  Thus, the IJ's

23   reference to broad discretion imported a legal standard at odds with the preliminary injunction.

24   See ECF No. 28-1 at 307.

25          This error appears to have infected the IJ's decision concerning both dangerousness and

26   flight risk and is not mitigated by the IJ's statement that she applied the clear and convincing

27   standard.  The clear and convincing standard requires that the evidence establish "an abiding

28   conviction that the truth of [the] factual contentions at issue is highly probable."  Mondaca-Vega

17

1    v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc).  As illustrated below, the IJ's invocation

2    of the clear and convincing standard functioned as "lip service" to a heightened standard that the

3    IJ did not then abide "in [the IJ's] reasoning and decision."  Nat'l Res. Def. Council, Inc. v.

4    Pritzker, 828 F.3d 1125, 1135 (9th Cir. 2016).[8]  In reaching this conclusion, the court makes no

5    finding as to whether respondents could, in a subsequent pre-deprivation hearing, show by clear

6    and convincing evidence that petitioner presents a danger or risk of flight.  Rather, the court finds

7    that the IJ failed to implement the clear and convincing standard in the following ways.

8         First, the IJ failed to make a meaningful determination as to present dangerousness in at

9    least two ways.  The IJ focused on petitioner's older criminal convictions, ECF 28-1 at 308-309,

10   which another IJ had already found did not demonstrate danger by clear and convincing evidence.

11   See Ngo v. I.N.S., 192 F.3d 390, 398 (3rd Cir. 1999), amended and rehearing denied Dec. 30,

12   1999 (emphasizing that "[t]he fact that some… [immigrants] posed a risk of flight in the past does

13   not mean they will forever fall into that category.  Similarly, presenting danger to the community

14   at one point by committing crime does not place them forever beyond redemption.").  Petitioner's

15   conviction history—involving one felony conviction, one parole violation, and two misdemeanor

16   convictions in relatively close succession several years earlier—are not like those in Martinez,

17   where the petitioner had multiple felony drug trafficking convictions more than ten years apart.

18   See Martinez, 124 F.4th at 775 (emphasizing that there was no indication that the noncitizen

19   would "not revert to his old habits of drug use and trafficking upon his release.").  The Ninth

20   Circuit found those multiple felony convictions over many years "provided compelling evidence

21   that he was a danger to the community."  Martinez, 124 F.4th at 785.  Here, by contrast, the IJ's

22   analysis was preoccupied with an increasingly stale conviction history which another IJ had

23   _____

24   [8]  Respondents submitted as supplemental authority a recent decision by another judge of this
     court denying a habeas petitioner's request for further relief after an IJ found the petitioner should

25   be detained at a detention hearing required by a preliminary injunction.  ECF No. 34-1 (Doe v.
     Becerra, et al., No. 2:25-cv-00647-DJC-DMC, ECF No. 58 (E.D. Cal. Oct. 21, 2025) (order

26   denying the petitioner's motion to amend the preliminary injunction)).  That decision involved
     procedural issues not raised in the instant motion.  The undersigned recognizes that the court in

27   Doe also denied an earlier request by the petitioner to enforce the preliminary injunction in that
     case, No. 2:25-cv-00647-DJC-DMC, ECF No. 41, but finds the two cases materially

28   distinguishable, at a minimum, based on the respective records before the IJs in each case.

1    already found insufficient to demonstrate danger more than two years earlier.

2    The IJ also failed to make a meaningful determination as to present dangerousness by

3    failing to substantively address petitioner's post-release evidence of rehabilitation.  That evidence

4    included proof of petitioner's successful completion of educational programs, an eighteen-month

5    DUI program, other rehabilitative programming to address the factors that led to his past criminal

6    convictions (including sex offender treatment), and his successful completion of state parole.

7    ECF No. 28-1 at 104-116, 125-126, 252-264.  The IJ stated that, "[t]he Court has carefully

8    considered the volume of evidence regarding the educational, vocational, and rehabilitative

9    courses and programming engaged in by Respondent, as well as the many positive character

10    reference letters … submitted on his behalf."  Id. at 309.  However, the IJ did not actually analyze

11    any of this evidence or attempt to explain why it did not mitigate danger, instead explaining only

12    why *other* evidence—concerning mental health—submitted by petitioner does not "negate the

13    dangerousness of his conduct."  Id. (citation omitted).  The IJ's failure to meaningfully address

14    the extensive mitigation record presented by petitioner is particularly troubling given that it

15    involved a period after another IJ had already found petitioner not to be dangerous by clear and

16    convincing evidence.  It is "not constitutional error for an IJ to base [a detention] decision on [a]

17    petitioner's criminal record, so long as the IJ analyzes the recency of the crimes *and* what (if any)

18    actions the petitioner has taken to rehabilitate" himself.  Perez v. Wolf, 445 F. Supp. 3d 275, 287

19    (N.D. Cal 2020) (emphasis added); see also Cole v. Holder, 659 F.3d 762, 771-72 (9th Cir. 2011)

20    (holding in another context of IJ decision making "where potentially dispositive testimony and

21    documentary evidence is submitted, the BIA must give reasoned consideration to that evidence").

22    Meaningful evaluation of mitigation evidence relevant to danger is necessary to ensure that the

23    "high burden" of the clear and convincing standard is "demonstrated in fact, not 'in theory.'"

24    Obregon v. Sessions, No. 17-CV-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20,

25    2017) (quoting United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991)).  For these reasons,

26    the IJ did not meaningfully assess petitioner's current dangerousness at the bond hearing.

27    Second, the IJ also erred in relying on the sparse record evidence concerning petitioner's

28    new misdemeanor charges to find by clear and convincing evidence that he is a danger.  DHS

1    presented no evidence reasonably showing that those charges demonstrate petitioner's release

2    would threaten the community.  Respondents did not submit a police report describing any

3    reckless or otherwise dangerous behavior connected to the new charges.  The evidence petitioner

4    presented—which the IJ did not mention—indicated that he was at a gas station when he was

5    approached by the police.  ECF No. 28-1 at 98.  Additionally, since May 2024, petitioner has

6    lifted the suspension on his driver's license.  See ECF No. 28-1 at 291 (copy of petitioner's valid

7    driver's license).  Following his arrest on the new charges, petitioner reported the charges to his

8    ICE supervision office and obtained a new ankle monitor.  Moreover, he attended every court

9    date while he was out of custody.  The IJ did not attempt to explain what about the news charges

10   makes petitioner dangerous.  The IJ instead stated that petitioner "did not describe the facts and

11   circumstances of these arrests in his written declaration"—which is not true, as just noted— "and

12   has not, for example, professed himself to be factually innocent."  ECF No. 28-1 at 308; see also

13   id. at 310 ("The Court again reiterates that [petitioner] has not, for example, argued that he is

14   factually innocent *vis a vis* these alleged violations.").[9]  In making this latter point, the IJ

15   impermissibly shifted the burden onto petitioner to show he was not dangerous ("factually

16   innocent") instead of maintaining the burden on respondents, as required by the preliminary

17   injunction order.

18        This leads to the related point that the new charges, standing alone, are insufficient to

19   demonstrate a material change in circumstances concerning petitioner's dangerousness.  Another

20   IJ had already determined, on the same clear and convincing standard, that DHS failed to show

21   that petitioner was a danger to the community.  "Where an individualized assessment of flight

22   risk and dangerousness has been made and bond granted, courts follow the Board of Immigration

23   Appeals in requiring a 'material change of circumstances' before bond can be revoked or

24   modified."  Doung v. Kaiser, -- F.Supp.3d --, 2025 WL 2689266, at *9 (N.D. Cal. Sept. 19, 2025)

25   (quoting Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981)).  This rule is compelled by due

26   process.  See Meza v. Bonnar, No. 18-cv-02708-BLF, 2018 WL 2554572, at *3 (N.D. Cal. June

---

[9]  The IJ also noted petitioner's "demonstrated willingness to reoffend," in apparent reference to the misdemeanor charges.  ECF 28-1 at 310.

1    4, 2018) (holding that where a noncitizen was detained under section 1226(c) and released, "due

2    process would seem to require an administrative hearing to show a material change in

3    circumstances" before she can be re-detained); Qazi v. Albarran, 2025 No. 2:25-cv-02791-TLN-

4    SCR, WL 2769837, at *3 (E.D. Cal. Sept. 29, 2025) ("Petitioner was previously released pursuant

5    to a finding that he was not at risk of fleeing or harming others, and as such, due process prevents

6    him from being redetained except upon a showing of a material change in circumstances.").  As

7    noted above, there was nothing in the IJ record in August 2025 showing petitioner's new charges

8    involved dangerous conduct.[10]  Under these circumstances, the new arrest could not, standing

9    alone, and under the same clear and convincing standard, demonstrate a material change in

10   circumstances warranting a different dangerousness outcome in August 2025 relative to the

11   dangerousness outcome in May 2023.[11]

12           For all these reasons, petitioner has shown that the IJ abused her discretion and committed

13   related legal error in finding he posed a danger to the community by clear and convincing

14   evidence.

15                              **b.  Flight Risk**

16           For similar reasons, petitioner has shown that the IJ abused her discretion in finding

17   petitioner to be a flight risk by clear and convincing evidence.  The IJ relied exclusively on

18   another IJ's denial of petitioner's requests for relief that would protect him against removal and

19   the "exceedingly speculative" possibility that he might prevail upon appeal of that denial or

20   obtain some other relief against removal.  ECF No. 28-1 at 310-312.  But the denial of

21   petitioner's requests for relief occurred in March 2023, *before* the May 2023 determination that

22   [10]  Not all alleged criminal conduct is equal – the severity and nature of unadjudicated charges
23   necessarily matter when an IJ relies on them in making a dangerousness determination.  Here, the
     IJ did not attempt to explain how the nature of the new charges against petitioner tend to show he
24   is dangerous, instead citing authority concerning arrests for allegedly violent conduct.  See id. at
     208 (citing Matter of Urena, 25 I&N Dec. 140, 140 (BIA 2009), which involved "several arrests
25   for offenses with the potential for violent harm to persons," and Vera-Perez v. Garland, No. 20-
     73247, 2022 WL 883742, at *1 (9th Cir. Mar. 24, 2022), which involved an arrest for corporal
26   injury on a spouse and another arrest for a DUI).  The IJ's failure to engage with the substance of
     the new charges against petitioner further demonstrates the IJ's misapplication of the heightened
27   clear and convincing burden.

28   [11]  Given the analysis above, the court need not reach petitioner's argument that the IJ should not
     have relied on unadjudicated criminal charges at all.  ECF No. 28-1 at 11-12.

1   DHS had not proven a risk of flight by clear and convincing evidence.  The IJ did not cite any

2   new evidence relevant to flight risk.  The absence of any change in circumstances relative to the

3   same agency's prior determination of flight risk on clear and convincing evidence—let alone a

4   material change in circumstances, see supra § V.B.2.a—demonstrates an abuse of discretion in

5   implementing the clear and convincing evidence standard.

6        Additionally, the IJ failed to meaningfully discuss the probative evidence petitioner

7   submitted demonstrating his significant ties to the community.  See Cole, 659 F.3d at 771

8   (explaining that if "the agency did not consider all the evidence before it, a catchall phrase does

9   not suffice, and the decision cannot stand.").  The IJ's passing reference to that evidence is

10  insufficient to show that the IJ meaningfully considered it in determining whether DHS had

11  carried its burden.[12]

12       **VI.    Conclusion**

13       Having determined that the IJ's decision did not comply with the clear and convincing

14  standard mandated by the preliminary injunction, the remaining issue is what remedy should be

15  ordered.  Given that this is respondents' first violation of the preliminary injunction order, the

16  court does not believe it would be appropriate to order petitioner unconditionally released.

17  Rather, the court will return petitioner to the position he was in after prevailing in obtaining

18  preliminary injunctive relief.  Respondents are ordered to release petitioner and may redetain him

19  only if they comply with the requirements for such redetention as set out in the preliminary

20  injunction order.

21       Accordingly, IT IS HEREBY ORDERED that:

22       1. Respondents' motion to dismiss (ECF No. 29) is denied without prejudice.

23       2. Petitioner's motion to enforce the preliminary injunction order (ECF No. 28) is

24  granted.

25       3. Respondents shall immediately release petitioner under the same conditions that he

26

27  _____

   [12]  Based on the above analysis, it is unnecessary to address petitioner's argument that the IJ was
   not a neutral fact finder.

28

1    was previously released from immigration custody.

2        4.  Before he may be redetained, petitioner shall be afforded the process required by the

3    court's preliminary injunction order in the form of notice and a hearing before an immigration

4    judge.  At any such hearing, respondents have the burden of establishing, by clear and convincing

5    evidence, that petitioner poses a current danger to the community or a risk of flight.

6        5.  Absent a further procedural order of the court, the parties shall file a joint status report

7    within 30 days indicating whether respondents will seek to redetain petitioner based on current

8    circumstances and whether petitioner still believes that discovery is warranted (ECF No. 17).  The

9    parties shall also submit a proposed timeline for any final merits briefing on the petition.[13]  The

10   court may convene a status conference after the filing of the joint status report.

11   DATED: October 22, 2025

12

13   _____

14   SEAN C. RIORDAN
     UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   [13]  The court recognizes that respondents have already filed their "return" on the petition.  ECF
     No. 29.  Respondents may choose to rest on that return.  However, the court believes further
     merits briefing may ultimately be necessary to address whether the preliminary injunction should
28   be converted into a judgment in petitioner's favor and/or whether the case has become moot.

23